IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | No. 3:19-CR-0018 |
| | * | |
| LARRY VERNON SNOW, and | * | |
| BRYANT AUSTIN SNOW | * | |

**GOVERNMENT'S OPPOSITION TO PRETRIAL MOTIONS**

The defendants, Larry Vernon Snow (Larry) and Bryant Austin Snow (Bryant, collectively the Snows or defendants), have filed several pretrial motions, with both requesting that the Court "strike" (as purported surplusage) the vehicle identification number (VIN), vehicle title, and license plate numbers in Counts Three and Four, as well as Larry seeking to exclude certain statements made by one of the government's victims, Person A, at trial. ECF Nos. 106, 107, 108. For the reasons set forth in greater detail below, the motions should be denied.

First, the Snows frame their surplusage argument as a question of law based on the indictment. In reality, their motion to strike is a request for the Court to invade the jury's province as fact-finder at trial. The Court should decline the invitation, which is procedurally improper and also incorrect on the merits. The issue involves 18 U.S.C. § 1028(d)(7), which defines "means of identification" as "*any name or number* that *may* be used, *alone or in conjunction with any other information*, to identify a specific individual, including *any*" of several non-exhaustive types of information. Thus, whether information is a "means of identification" is an inherently fact-dependent question that depends on the actual evidence at trial, considered in its totality with other evidence, not in isolation. Here, the evidence will show that the Snows used the names, VINs, title numbers, and license plate numbers precisely as a means of identification—that is, "any name or number that may be used, alone or in conjunction with any other information, to identify a

specific individual." As such, the language at issue in the indictment is not surplusage at all. The Snows, however, single out certain information, divorce it from other evidence, and ask the Court to essentially issue a Rule 29 decision pretrial before the government can have a chance to prove its case. The Court should decline this request.

Similarly, Larry's motion to exclude statements made by one of the victims in this matter is premature and should be denied without prejudice pending trial. Such statements might, with adequate foundation, be relevant non-hearsay testimony, but in any event, pretrial ruling on them in the abstract is unnecessary at this time.

## BACKGROUND

**A. Bryant Distributes Heroin and Methamphetamine in Greene County, Virginia.[1]**

On or about October 13, 2017, the Greene County Sheriff's Office, through the Blue Ridge Task Force, conducted a controlled purchase of heroin from Bryant through Person A[2] in Greene County, Virginia, which is within the Western District of Virginia. On or about November 6, 2017, the Greene County Sheriff's Office, through the Blue Ridge Task Force, conducted a controlled purchase of methamphetamine from Bryant through Person A in Greene County, Virginia. On or about November 13, 2017, the Greene County Sheriff's Office, through the Blue Ridge Task Force, arrested Bryant for two distribution of controlled substance charges, one for each of the controlled purchases with Person A. Bryant was then detained pending trial in CVRJ.

After being charged, Bryant obtained evidence from the Commonwealth's Attorney of Greene County regarding the controlled purchases of heroin and methamphetamine. Among that

---

[1] When considering an indictment, the court must assume its factual allegations are true and assess the indictment from a "practical" rather than "purely technical" perspective. *United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004); *United States v. Matzkin*, 14 F.3d 1014, 1019 (4th Cir. 1994). For motions under Fed R. Crim. P. 12(b), district courts assume the facts alleged in the indictment as true. *See United States v. Lund*, 853 F.2d 242, 244 n. 1 (4th Cir. 1988).
[2] This individual is a victim in the government's superseding indictment. The government does not list this person's name in order to protect his identity.

evidence were reports from the Blue Ridge Task Force that documented the make, model, and license plate of vehicles Person A drove during the purchases of heroin and methamphetamine, but the law enforcement reports did not mention Person A by name.

On or about April 20, 2018, Bryant and the Commonwealth's Attorney of Greene County agreed that Bryant would plead guilty to the methamphetamine distribution and that the Commonwealth's Attorney would dismiss the heroin distribution charge on the condition that Bryant would comply with all conditions in the plea agreement. Among the conditions were that Bryant not commit any new criminal offenses and not have any contact, directly or indirectly, with various, specifically-enumerated, individuals, including Person A.

On or about April 20, 2018, Bryant pled guilty to the methamphetamine charge and was sentenced on that charge and a probation violation to a total term of imprisonment of three years. Although Bryant's original agreement with the Commonwealth's Attorney for his drug distribution charge included a recommendation for a one-year sentence, the Circuit Court increased his sentence by two years for his probation violation history, which began in November 2016 following an earlier state drug charge.

**B. Bryant and Larry Plan to Retaliate against and Tamper with Person A**

While in jail, Bryant made recorded phone calls to his father, Larry, the elected Commissioner of Revenue for Greene County, Virginia. As Commissioner of Revenue, Larry had access to a Virginia Department of Motor Vehicles (DMV) system that contained personal information for vehicle registrants. On recorded jail calls, Bryant and Larry planned to retaliate against Person A, not only for his involvement in Bryant's case but for Person A's prior cooperation with federal law enforcement. They also planned to prevent Person A from cooperating with law enforcement in the future.

Specifically, on April 21, 2018, a day after his sentencing, Bryant mentioned another inmate who had been issued a probation violation, and Larry responded, "Well, somebody set him up, too, . . . it was either [Person A] set him up or [Person C] and somebody else set him up." Larry said that he was "surprised somebody ain't smoked [Person C]'s ass no bigger than he is." Bryant described an incident when he "could have" done so but did not before Person C went to Florida. Bryant told Larry that Person C would "be back up here" and "so will [Person A]." Larry responded, "[Person A]'s gonna get his, I promise you that."

Later in the April 21, 2018, call, Bryant discussed with Larry the documents that Bryant had obtained that included license plate numbers linked to the controlled purchases with Person A. Bryant told Larry, "I want you to print off the registration for that because it doesn't list [Person A]" in the documents Bryant had. Larry explained to Bryant that Person B's father had told Larry that Person B's father would go to a known drug trafficking area in Greene County, i.e. the "Brush," and "tell everybody that I know what [Person A]'s done." Bryant explained that he would make copies of the controlled purchase paperwork with the license plate numbers on them "to corroborate" Person A being a confidential informant, and Bryant told Larry to get the DMV "paperwork to match those two cars to [Person A's] mama's name and his name." Larry responded, "I can do that."

Larry accessed the DMV terminal, in violation of federal law, 18 U.S.C. § 2722(a), precisely to use the resulting information as a means of identification of Person A and his mother— that is, to prove that the vehicles driven during the controlled purchases with Bryant were, in fact, driven by Person A. They planned to use that vehicle information to prove to those at CVRJ and in "the Brush," that Person A was the "rat who snitched" on Bryant and for that cooperation to "come back and bite him in the ass." Larry mailed the registration information to Bryant.

Bryant also spoke to his girlfriend from jail about having her post paperwork on Facebook, to "prove [Person A]'s the rat who snitched" on Bryant and for people to "like and share" such information. Later, Bryant asked Larry to give Bryant's girlfriend copies, so that "she could put it on Facebook [and] let everybody know," and that Bryant would ask her to "highlight certain things" so that it would be "obvious what's what." Larry responded, "Mmhmm, yeah."

At the same time, law enforcement was listening to Bryant's jail calls and alerted DMV special agents to this plot. On or about May 2, 2018, DMV special agents executed a search warrant of Bryant's jail cell at CVRJ and found DMV printouts for Person A and his mother. On those printouts were the full names of Person A and his mother, as well as the license plate, vehicle identification number (VIN), vehicle title number of the vehicles Person A drove during the controlled purchases with Bryant.

**C. Bryant and Larry Become Targets of a Federal Investigation.**

On or about May 31, 2019, the federal government notified Bryant and Larry that they were targets of a federal grand jury investigation into their conduct. The government also notified them that certain federal statutes criminalize tampering with and retaliating against a witness or informant of a federal investigation, including Title 18, United States Code, Sections 1512 and 1513.

Thereafter, in or about October 2019, before the November 2019 election, Larry spent more than $3,300 to cause approximately 12,000 leaflets to be sent to residents of Greene County in which he purported to promote the political opponent of the sheriff at the time. But, in essence, it was a leaflet to the entire county to air his personal grievances and drum up opposition to the use of cooperators—and specifically, to retaliate against Person A for his cooperation with state and federal authorities, and to tamper with any such cooperation in the future. Larry stated that "[i]n

5

view of all the newspaper articles and media attention that my son and I have endured over the past few years, there are a few injustices and struggles that I would like to share with you." Larry went on to describe a shooting incident involving Bryant that he believed the sheriff's office did not investigate properly.

Larry then shared his personal view that the sheriff's office should not use cooperators in drug investigations. Larry specifically mentioned a known "drug dealer" in the community who helped the sheriff. Despite knowing that Person A was now a witness and potential victim in a federal grand jury investigation, Larry informed the entire county that the sheriff—whose office had previously used Person A as a cooperator, a fact which Larry now knew—was wrongly using "drug dealers (who are also police informants)" who received specific suspended sentences, referring to Person A and his prior criminal convictions and sentences. Larry then stated, "You are probably thinking that this letter wreaks of 'sour apples.' Not so!! This is simply a plea to the Greene County residents to vote for [a different sheriff]."

### D. A Federal Grand Jury Charges Bryant and Larry on Multiple Counts.[3]

On June 24, 2020, a grand jury in this district charged Bryant with one count of heroin distribution in violation of 21 U.S.C. § 841; the Snows with conspiracy to commit the unlawful transfer, possession, or use of a means of identification in connection with a violation of federal law, witness and informant retaliation, and witness and informant tampering, in violation of 18 U.S.C. § 371; and two substantive counts of the unlawful transfer, possession, or use of a means of identification in connection with a violation of federal law, namely the unlawful obtaining and disclosure of personal information from a motor vehicle record, in violation of 18 U.S.C. § 1028(a)(7). ECF No. 58. Counts Three and Four allege that the "Name, vehicle identification

---

[3] The Snows were first arrested in November 2019 on the government's first indictment, charging them with two counts under § 1028. ECF No. 3. The government later superseded that indictment in June 2020. ECF No. 58.

number, vehicle title number, and vehicle license plate number identifying [Person A and his mother] on [the] DMV printout" are the means of identification under § 1028.

A jury trial in this matter is set for September 20, 2021. In advance of that trial, the defendants have filed several pretrial motions, which the government respectfully requests be denied.

## ARGUMENT

### A. The "Motion to Strike" Surplusage Is An Ersatz Motion to Dismiss that Improperly Seeks Resolution of Facts to be Developed At Trial.

At the outset, the defendants provide no legal basis for striking the VIN, title, and license plate number from Counts Three and Four.[4] This is unsurprising, given that the motion is actually an effort to pretermit the jury from learning the totality of the evidence showing that the Snows used a "means of identification" in connection with criminal or unlawful activity. In short, the motion to strike—under the theory that an isolated subset of information cannot as a matter of law be a "means of identification"—is moonlighting as a motion to dismiss part of the government's case, all without considering the full scope of the trial evidence, as the text of § 1028(d)(7) requires. Therefore, the motion is an end-run around the government's evidence seeking actually to dismiss Counts Three and Four under Fed R. Crim. P. 12, or ultimately for the Court to prematurely rule that no rational trier of fact could find that an element was met under Fed. R. Crim. P. 29.[5] This is all before anyone—the Court or the jury—has heard the government's evidence, which will

---

[4] The only reference to legal authority is a case in the government's favor. *United States v. Lagunes*, No. 3:12-CR-067, 2013 WL 5498257 (N.D. Ind. Oct. 2, 2013) (applying definition for a guidelines enhancement in case involving the creation of vehicle titles).

[5] Indeed, in other cases, the issue of how a "means of identification" is defined arises in the context of motions to dismiss or motions for judgment of acquittal. *See, e.g., United States v. Mitchell*, 518 F.3d 230 (4th Cir. 2008); *United States v. Salahmand*, No. 08-CR-192, 2009 WL 10680619, at *1 n.1 (D.C. May 12, 2009); *United States v. Blixt*, 548 F.3d 882, 884 (9th Cir. 2008).

7

show beyond a reasonable doubt that the information in question was being used here precisely as such a means of identification as set forth in § 1028(d)(7) and under applicable Fourth Circuit law.

Further, Counts Three and Four also list the names of the victims as a means of identification. The defendants attempt to divorce the unlawful use of the victims' names from the unlawful use of the VIN, title, and license plate numbers, focusing instead on the question of whether such numbers by themselves are "means of identification" under § 1028. Such an effort is misleading. The defendants are charged with unlawfully using the name, *as well as* the VIN, title, and license plate numbers as a "means of identification." Accordingly, the question that will be before the jury is not whether the unlawful use of another person's VIN, title, and license plate numbers by themselves are properly within the scope of the identity theft statute, but whether the unlawful use of (1) a full name, (2) VIN, title, and license plate numbers, and (3) and any other information, together are "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual." That is precisely what the government's evidence will show at trial.

Ultimately, courts "lack authority to review the sufficiency of evidence supporting an indictment," *United States v. Wills*, 346 F.3d 476, 488 (4th Cir. 2003), and are instead limited to the allegations on the face of the indictment. *United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012). Dismissal is not proper based "on a determination of facts that should have been developed at trial." *Id.*; *accord United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004). At bottom, Congress crafted § 1028(d)(7) in broad, encompassing terms— "any name or number"; "may be used"; "alone or in conjunction with any information"—when defining what counts as a "means of identification." That language thus requires a fact-specific inquiry that can only be evaluated at trial after the government's case-in-chief.

8

Finally, it appears that the defendants' motion to strike is based on weaknesses they perceive in the government's ability to prove a key fact—i.e., whether a means of identification was involved—related to the superseding indictment, rather than any undisputed law or fact that demonstrates the government cannot carry its burden. A district court may dismiss an indictment under Rule 12 "where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial." *See United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012) (holding that to look outside the allegations on venue would be improper) (quoting *United States v. Snipes*, 611 F.3d 855, 866 (11th Cir. 2010)) (internal quotations omitted). "As a general rule, when a pretrial motion raises a question of fact that is intertwined with the issues on the merits, resolution of the question of fact thus raised must be deferred until trial." *United States v. Russell*, 919 F.2d 795, 797 (1st Cir. 1990); *United States v. Wilson*, 26 F.3d 142, 159 (D.C. Cir. 1994). Without seeing the government's evidence and hearing witnesses' trial testimony, neither the jury nor the Court has no means to rule whether the VIN, title, and license plate numbers in conjunction with "any other information," including the victim's names, can identify a specific person. Therefore, whether the government can prove the defendants transferred, possessed, or used a "means of identification" should be deferred until the Court and the jury have heard the evidence.

Nonetheless, even if the Court considers the Snows' substantive argument under the rubrics of Rule 12(b)(3) or Rule 7(d), their motion still fails.

**1. Motion Under Rule 12(b)(3)**

In the Rule 12(b)(3) context, district courts first consider the plain language of the statute. For example, in *United States v. Mitchell*,[6] the Fourth Circuit examined the meaning of the phrase

---

[6] In *Mitchell*, the Fourth Circuit rejected the government's argument that the name "Marcus Jackson," combined with an accurate year of birth and city of residence on a fake driver's license, were the means of identification of an

"a means of identification" of another person, stating: "The definition, in other words, allows for an identifier, taken alone or together with other information, to qualify as a means of identification so long as the sum total of information identifies a specific individual." 518 F.3d 230, 234 (4th Cir. 2008). Here, based on that plain language, the sum total of information—including a name, VIN, title, and license plate number, among other information on the printouts—identifies a specific individual. The Court may stop its inquiry there.[7] Yet, the government will address several other unpersuasive arguments made by the defendants.

First, the list of specific examples of identification types included in section 1028(d)(7) is non-exhaustive, and the mere fact that the section does not specifically mention VIN, title, and license plate numbers is, by itself, without consequence. *See United States v. Hilton*, 701 F.3d 959, 967 n.4 (4th Cir. 2012) (observing that § 1028(d)(7) "enumerates a *non-exhaustive* list of means of identification" (emphasis added)). "It is hornbook law that the use of the word 'including' indicates that the specified list of [means of identification] that follows is illustrative, not exclusive." *Puerto Rico Maritime Shipping Auth. v. I.C.C.*, 645 F.2d 1102, 1112, n. 26 (D.C. Cir. 1981); *see also Fed. Land Bank of St. Paul v. Bismark Lumber Co.*, 314 U.S. 95, 100 (1941) ("the term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle"). In addition, the statute specifically defines "means of identification" to include "*any* . . . number that *may* be used . . . to identify a specific individual."

---

individual named Marcus Deyone Jackson. Although the first and last name, year of birth, and city of residence all matched Marcus Deyone Jackson, the fake driver's license omitted the middle name, "did not have anything close to the correct street name and address of the real Marcus Deyone Jackson," and "the month and day of birth did not match." 518 F.3d at 235. Moreover, the fake driver's license number, which had not been issued by the DMV in question, did not match the real Jackson's driver's license number. *Id*. at 236. For all of those reasons, the Fourth Circuit held that the fake driver's license "simply could not be used to identify a specific Marcus Deyone Jackson." *Id*. No such issues are present here; indeed, it appears undisputed that the DMV printouts at issue identified Person A and his mother specifically, and that the Snows were utilizing them as a means of identifying Person A as a cooperator against whom they were retaliating and whom they were seeking to tamper with moving forward.

[7] Neither the defendants nor the government have found a case in which a court has found that this definition is ambiguous.

10

18 U.S.C. § 1028(d)(7) (emphasis added). "By using the term 'any' to qualify the term ['number'], the statute reflects Congress's intention to construct an expansive definition." *United States v. Blixt*, 548 F.3d 882, 887 (9th Cir. 2008) (citing *Ali v. Fed. Bureau of Prisons*, ⸺ U.S. ⸺, 128 S.Ct. 831, 835–36 (2008) ("Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'") (citation and alteration omitted)). Accordingly, the use of the term "any name or number" as well as "used, alone or in conjunction with *any* other information" evidences Congress's intent to broadly define "means of identification."

Second, section 1028(d)(7) should not be read to exclude the VIN, title, and license plate numbers simply because they are supposedly not "typically susceptible" to identity theft, as the defendants argue. It is clear that the phrase "means of identification" is a defined term sought to cover all misuse of names and numbers used to identify a person, and not meant to be limited to only commonly understood forms of identification or those used solely in identity theft cases.[8] For example, routing codes, taxpayer identification numbers, and images of an individual's retina are not commonly understood forms of identification that are typically susceptible to identity theft, yet each is specifically included in the statute as a "means of identification." *See United States v. Salahmand*, No. 08-CR-192, 2009 WL 10680619, at *3-4 (D.C. May 12, 2009) (rejecting an argument similar to defendants'). There are many examples throughout the United States that show how expansive the definition has been construed. Some examples include signatures,[9] bank

---

[8] In this respect, it is worth emphasizing that Counts Three and Four do not allege "identity theft" in the colloquial sense of the Snows impersonating anyone's identity, but rather charge the misuse of a means of identification in connection with a federal violation—that is, knowingly transferring, possessing, and using the means of identification via U.S. mail in connection with unlawfully obtaining and disclosing personal information from a motor vehicle record in violation of 18 U.S.C. § 2722(a). In this regard, § 1028(a)(7) encompasses more conduct than colloquial identify theft, and it reaches the sort of misuse of names and numbers in connection with federal violations that the evidence at trial will show happened here.

[9] *See United States v. Blixt*, 548 F.3d 882, 886 (9th Cir. 2008); *United States v. Porter*, 745 F.3d 1035, 1042 (10th Cir. 2014); *United States v. Lewis*, 443 F. App'x 493, 496 (11th Cir. 2011).

account numbers,[10] birth certificates,[11] usernames and passwords,[12] DEA registration number,[13] PINS,[14] and telephone numbers.[15]

Third, even less persuasive is defendants' statutory construction argument that section 1028(d)(7) should be read to exclude the VIN, title, and license plate numbers because such information identifies property and not people. For one, people are often associated with their property and thus can be identified by reference to them. Indeed, that is precisely what the defendants were seeking to do with the DMV information at issue here. Also, § 1028(d)(7)(D), which incorporates § 1029(e)(1), expressly contemplates that various devices, cards, plates, and equipment are means of identification. By listing "unique electronic identification . . . address" and "telecommunication identifying information or access device," section 1028(d)(7) certainly contemplates that a person may be identified through property ownership.

Regardless, it is beyond debate that the VIN, title, and license plate numbers at least can be considered "any other information," alone or in conjunction with a name or number, to identify a specific individual. Further, common sense dictates that law enforcement often uses vehicle information to identify people. *See, e.g.*, *Kansas v. Glover*, -- U.S. ---, 140 S. Ct 1183 (2020) (holding law enforcement had reasonable suspicion to stop a vehicle registered to someone whose license was revoked). To argue otherwise places semantics above substance.

Most importantly, the very nature of this case shows that this information "may"—as § 1028(d)(7) puts it—be used to identity a specific person. Here, the DMV printouts with the VIN,

---

[10] *United States v. Scott*, 448 F.3d 1040, 1045 (8th Cir. 2006).
[11] *Tinico v. United States*, No. 7:13-CR-74, 2016 WL 5957622, at *12-14 (E.D.N.C. Sept. 8, 2016) (construing definition of "means of identification" in a 2255 petition).
[12] *United States v. Barrington*, 648 F.3d 1178, 1193 (11th Cir. 2011).
[13] *United States* v. *Salahmand*, No. 08-CR-192, 2009 WL 10680619 (D.C. May 12, 2009).
[14] *United States v. Usher*, 789 F. App'x 585, 586 (9th Cir. 2020).
[15] *United States v. Geeslin*, No. 05–60616, 2007 WL 756457, *1 (5th Cir. Mar. 9, 2007) (holding that a telephone number is a means of identification under section 1028(d)(7)).

title, and license plate numbers of the vehicles were *actually* used by the Snows "to identify a specific individual"—that is, the individual who was registered to each car used during the controlled purchases. The reason they did so, of course, was as a means of identifying both Person A and his mother in order to identify Person A as the cooperator against Bryant.

### 2. Motion Under Rule 7(d)

Federal Rule of Criminal Procedure 7(d) states that "upon the defendant's motion, the Court *may* strike surplusage from an indictment." FED. R. CRIM. P. 7(d) (emphasis added). But there is no requirement that surplusage be stricken under *all* circumstances. Rather, "[a] motion to strike surplusage from the indictment should be granted only if it is *clear* that the allegations are not relevant to the charge and are inflammatory and prejudicial." *United States v. Williams*, 445 F.3d 724, 733 (4th Cir. 2006) (emphasis added). This test is conjunctive, meaning that if just one element is lacking, then courts should refrain from striking surplusage. *United States v. Cooper*, 384 F. Supp. 2d 958, 959 (W.D. Va. 2005) (Moon, J.).

As an initial matter, the VIN, number, and license plate numbers are clearly relevant to the "means of identification" issue. This information, together with the victim's full names and the discovery in Bryant's possession, provided proof of a specific individual who was the cooperator against Bryant. This very information was intended to be used as a way, or a "means," to identity a specific individual. Therefore, it is not clearly *irrelevant*, but clearly *relevant* to proving Counts Three and Four.

Further, even if the question was close, the defendants have failed to demonstrate that the language at issue is *clearly* irrelevant, prejudicial, *and* inflammatory. The only reason articulated by defendants to strike the VIN/title number/license plate language is that—construed (improperly) in isolation—the information (supposedly) does not meet the definition of "means of

13

identification" under section 1028(d)(7). But the Snows' argument does not meet the standard of "clearly" irrelevant, prejudicial, and inflammatory. Instead, the issue of whether VIN, title, and license plate numbers meet the definition of a means of identification is a matter for the jury to decide at the close of *all* the government's evidence—not just an artificial subset of it in pretrial motions. Defendants point to no cases in which courts strike language from an indictment because the language does not meet a statutory definition—probably because courts recognize that is the very matter a jury is left to decide (subject to the Court's review at the Rule 29 stage after all the evidence has been admitted). The VIN, title, and license plate numbers are highly relevant in deciding whether they could be used alone or in conjunction with "any" information to identity a specific individual. The government's evidence at trial will show that they are relevant and meet the statutory definition, but the Court and the jury cannot make that decision until they see the government's evidence. To rule otherwise would be premature.

**B. Larry's Motion in *Limine* Presupposes the Government's Evidence and Seeks to Exclude Evidence of Harm He Intended to Inflict.**

Larry also moves to exclude certain statements by Person A and "any similar statements made by any person." In his motion, Larry requests that certain statements be excluded as "hearsay and lacking any evidentiary foundation" under Rules 401, 402, 801, and 802. In other words, Larry is arguing that the statements listed are not relevant and, if they were, are inadmissible hearsay. Both are wrong. Like the surplusage motion, this motion in *limine* is premature. At this pretrial stage, it should be denied.

**1. Relevance**

The statements listed in the motion can be summarized as statements made by Person A to law enforcement about harassment he has experienced by members of the Greene County community as well as warnings by other people about future harassment, all relating to him being

a cooperator or "snitch." In its Superseding Indictment, the government alleges that Bryant and Larry conspired to commit witness retaliation under 18 U.S.C. § 1513(e) and witness tampering under 18 U.S.C. § 1512(d)(1), (2), and (4). For a witness retaliation, the statute prohibits:

> Whoever knowingly, with the intent to retaliate, takes *any action harmful* to any person, including interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense.

18 U.S.C. § 1513(e) (emphasis added). This part of the statute differentiates the type of harm done to the witness—whereas other subsections criminalize bodily injury or physical harm, this subsection criminalizes "any harm," including economic and reputational harm. "Section 1513(e) broadly condemns a wide range of retaliatory actions that may inflict only emotional or economic harm." *United States v. Stoker*, 706 F.3d 643, 648 (5th Cir. 2013) (where defendant mailed a copy of a report to informant); *accord United States v. Garner*, No. 19-CR-54, 2019 WL 2646584, at *1 (W.D.N.Y. June 26, 2019).

For witness tampering, the statute prohibits the intentional *harassment*, or attempted harassment, of another person that would hinder, delay, prevent, or dissuade that person from attending or testifying in a proceeding, reporting to law enforcement a potential offense, or from assisting in a criminal prosecution. 18 U.S.C. § 1512(d). *See United States v. Wilson*, 796 F.2d 55, 58-89 (4th Cir. 1986) (defining "harass" as a single act or series of acts that would "badger, disturb or pester").

As a general matter, all relevant evidence is admissible unless there are constitutional, statutory, or rule-based exceptions preventing its admission. *See* FED. R. EVID. 402. Rule 401 of the Federal Rules of Evidence defines "relevant" evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. What

15

constitutes "relevant evidence" depends on the facts of the case, the nature of the claims, and the associated defenses to those claims. *United States v. Seko*, No. 1:15-CR-301, 2017 WL 1369037, at *1 (E.D. Va. Apr. 10, 2017). In a criminal case, a fact is "of consequence" if it makes it more or less likely that the defendant committed the charged conduct. *United States v. Hazelwood*, 979 F.3d 398, 409 (6th Cir. 2020). Courts do not require that each piece of evidence directly prove or disprove an element of the offense. *Id.* (citing 1 MCCORMICK ON EVID. § 185 (8th ed.)) ("[S]ome evidence that is merely ancillary to evidence that bears directly on the issues may be admissible."). However, evidence must at least be "a step on one evidentiary route to the ultimate fact." *Id.* (quoting *Old Chief v. United States*, 519 U.S. 172, 179 (1997)).

Here, the government's evidence will prove that the defendants intended to harm or harass Person A by spreading in the community that he was a "snitch" or a "rat." Now, the defendants seek to exclude the very evidence that proves the natural consequence of their actions. The trier of fact "is free to infer the intent to retaliate from the natural consequences likely to flow from the defendant's actions." *United States v. Edwards*, 783 F. App'x 540, 543 (6th Cir. 2019). In *Edwards*, for example, the defendant was charged under § 1513(e) in connection with conduct almost indistinguishable from this case, i.e. posting on Facebook that a witness was a "snitch." There, the Sixth Circuit affirmed the conviction, which was based on the victim's testimony that his family received threats and of not feeling safe, as well as a drug enforcement investigator's testimony as to the significance of the word "snitch" with the use of informants. Together, the evidence was sufficient to show retaliatory intent and resulting harm. Like here, the defendant in *Edwards* argued that any harm resulting to the victim was not caused by the defendant, but by other people who were also posting on Facebook and talking about the victim as well. The Sixth

16

Circuit rejected that argument, stating, "Unfortunately for Edwards, federal criminal law does not employ a several liability standard." *Id.* at 544.

Likewise, this Court should permit testimony that are the natural consequences of the defendants' actions, namely members of the community harassing Person A.  To do otherwise would permit the defendants to use their conduct as a sword in order to prevent witnesses against them as well as a shield to protect them in future witness retaliation and tampering cases.  Whether the community harassment is linked to the defendants' actions should be left for the jury to decide.  As a result, Larry's arguments raised in his motion in *limine* go to weight, not admissibility.

**2. Hearsay**

The statements listed by Larry are not hearsay and, even if they were, neither Larry nor the Court knows yet how the government would seek to prove such statements in order to avoid potential hearsay problems.

If not offered for the truth of the matter it asserts, a statement is not hearsay.  Significantly, "'evidence is not hearsay when it is used only to prove that a prior statement was made and not to prove the truth of the statement.'" *United States v. Ayala,* 601 F.3d 256, 272 (4th Cir. 2010) (quoting *Anderson v. United States*, 417 U.S. 211, 220 n.8 (1974)).  A statement is not hearsay if it is offered to prove knowledge or to show the effect on the listener or listener's state of mind, such as fear. *United States v. Safari*, 849 F.2d 891, 894 (4th Cir.1988).  Indeed, district courts in other similar cases have allowed testimony of threats and feelings of fear, especially if the effect was to not cooperate with law enforcement further or to explain why there was harm as a result of retaliation.  *See, e.g., Edwards*, 783 F. App'x 543-44.

But none of these statements would be made in a vacuum, and the Court may give a curing instruction as to how the testimony is not being offered for its truth.  Further, the Court will not

know how or if such statements are being offered until trial. Therefore, the government respectfully requests that this motion in *limine* be denied without prejudice to any objections made at trial.

## CONCLUSION

For the foregoing reasons, the Court should deny the defendants' Motion to Strike and Larry Snow's First Motion in *Limine*.

Respectfully submitted,

DANIEL P. BUBAR
Acting United States Attorney

/s/ Kate Rumsey
KATE RUMSEY
Assistant United States Attorney
Texas Bar No. 24081130
255 West Main Street, Room 130
Charlottesville, Virginia 22901
Kathryn.Rumsey@usdoj.gov

RYAN FAULCONER
Trial Attorney
Colo. Bar No. 40631
U.S. Department of Justice
Criminal Division
Computer Crime & Intellectual Property Section
1301 New York Ave NW, 6th Floor
Washington, DC 20005
Ryan.Faulconer@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a copy to the counsel of record.

/s/ Kate Rumsey
Assistant United States Attorney